UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-cv-80226-COHEN/SELTZER

SENIOR SERVICES OF PALM
BEACH, LLC, d/b/a ALWAYS
BEST CARE OF PALM BEACH,

    Plaintiff,

v.

ABCSP, Inc.,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

**COMES NOW**, the Plaintiff, SENIOR SERVICES OF PALM BEACH, LLC, by and through the undersigned counsel and pursuant to the Federal Rules of Civil Procedure and Local Rules, hereby files this Response in Opposition to Defendant's Motion to Compel Arbitration and Dismiss Proceedings, and states the following in support thereof:

### I.    Background

This is an action brought by Florida franchisee, SENIOR SERVICES OF PALM BEACH, LLC, ("Plaintiff Franchisee") against the franchisor, ABCSP, INC., ("Defendant Franchisor"). The franchise purchased by Plaintiff Franchisee is structured to provide home health care services to elderly clients as well as placement services, in which the franchisee assists in placing clients who are need of an assisted living facility with such a facility. The franchise relationship between the parties is memorialized in a Franchise Agreement, which was duly executed in March 2009, and which contains a Multi-Unit Development Agreement. *See* Franchise Agreement [DE 1-1].

In its Complaint, filed February 28, 2012, Plaintiff Franchisee's first claim, and the claim that is relevant to the present motion, is for a Declaratory Judgment on the issue of whether the Arbitration Clauses contained in the parties' Franchise Agreement and Multi-Unit Development Agreement ("Arbitration Clauses") are conscionable as they relate to Plaintiff Franchisee. *See* Complaint [DE-1]. Plaintiff Franchisee then alleges that Defendant Franchisor: (1) materially breached the Franchise Agreement between the parties; (2) violated the Florida Franchise Act; 3) violated the Florida Unfair and Deceptive Trade Practices Act; (3) breached the Implied Covenant of Good Faith and Fair Dealing; (4) fraudulently induced Plaintiff Franchisee; (5) negligently misrepresented and omitted material existing facts; (6) intentionally inflicted emotional distress; (7) and in the alternative, Plaintiff Franchisee asked for Rescission.

Prior to that time, Plaintiff Franchisee sent an unfiled version of its Complaint to Defendant Franchisor in the hope of reaching an amicable agreement without the need for litigation. However, on February 24, 2012, just prior to Plaintiff Franchisee's filing of its Complaint with this court, Defendant Franchisor abruptly ended negotiations with Plaintiff Franchisee and filed a Demand for Arbitration with the American Arbitration Association pursuant to the Arbitration Clauses in the Franchise Agreement. *See* Franchise Agreement [DE 1-1].

Defendant Franchisor now asks this Court to compel the arbitration and dismiss the present matter in front of this Court. However, Plaintiff Franchisee believes, as it alleges in its first claim for relief, that the Arbitration Clauses are unconscionable as a matter of law based upon several factors discussed herein. As a result, Plaintiff Franchisee is of the belief that the Arbitration Clauses cannot be upheld, and the dispute must be adjudicated by the Court.

## II. The Court has Jurisdiction Over the Validity of the Arbitration Clause

Pursuant to the Franchise Agreement between the parties, California law and the Federal Arbitration Act are to govern any disputes arising from the contract. *See* [DE 1-1], Section 20.7. Accordingly, the U.S. Supreme Court has held that under the Federal Arbitration Act, a court must first be "satisfied that a valid arbitration agreement exists" before arbitration may be ordered. *AT&T Mobility, LLC v. Conception*, 131 S. Ct. 1740, 1745 (U.S. 2011). The California Supreme Court has similarly held that challenges to the validity of an arbitration agreement "are to be resolved by the trial court." *Rosenthal v. Great Western Fin. Securities Corp.,* 14 Cal. 4th 394, 402 (Cal. 1996); *See also Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1263-1264 (9th Cir. 2006).

This is because arbitration agreements are subject to the same rules of construction as apply in any other contract, and must be proven valid upon challenge before the overarching contract can be required to be arbitrated. *See First Options v. Kaplan*, 514 U.S. 938, 944 (U.S. 1995); *See also Buckeye Check Cashing, Inc., v. Cardegna*, 546 U.S. 440, 443-444, 447 (U.S. 2006) (stating that the FAA substantively commands that arbitration agreements be treated like all other contracts); *See also Buckeye*, 546 U.S. at 446 (holding that where a party challenges the arbitration clause itself, the validity of the clause is a threshold issue to be considered by the courts in the first instance and not by the arbitrator).

Defendant Franchisor cites several cases in support of its position that the issue of arbitrability is to be decided by the arbitrator when the contractual document provides for the AAA Rules to govern.[1] Those cases are certainly valid law and that position is certainly relevant

---

[1] Notably, Defendant Franchisor cites to Florida law in supporting this position, which, pursuant to the terms of the Franchise Agreement that it drafted, is the inappropriate choice of law for disputes arising from the Franchise Agreement. *See* [DE 1-1]. The reality is, Defendant

to this case, just not to support Defendant Franchisor's position. This is due to the fact that Plaintiff Franchisee is not challenging the arbitrability of the claims it brings against Defendant Franchisor. Rather, Plaintiff Franchisee is challenging the validity of the Arbitration Clause itself, a preliminary matter that must be determined by the courts before the issue of arbitrability may arise. *See Buckeye*, 546 U.S. at 446.

The term "arbitrability" refers to the jurisdiction of the arbitrator over an issue. *See Van Waters & Rogers, Inc. v. International Bhd. of Teamsters, et al.*, 913 F.2d 736, 740 (9th Cir. 1990); *See also Nat'l Emergency Med. Servs. Ass'n v. Am. Med. Response West*, 2011 U.S. Dis. LEXIS 148065 (E.D. Cal. 2011). Defendant Franchisor cites first to *Brandon, Jones, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677 (S.D. Fla. 2001), to support its position. However, as previously mentioned, this case addresses the issue of arbitrability and not that of the validity of the Arbitration Clause itself. *See Id.* at 683. Notably, though, in reference to 9 USCS § 4, which allows for petitions to the U.S. court for orders to compel arbitration, the court held:

> A party to an agreement or provision for arbitration subject to this law claiming the neglect or refusal of another party thereto to comply therewith may make application to the court for an order directing the parties to proceed with arbitration in accordance with the terms thereof. If the court is satisfied that no substantial issue exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine the issue and, according to its determination, shall grant or deny the application.

Another case Defendant Franchisor points to is *Mercury Teleco Group, Inc. v. Impressa De Telecommunicacion de Bogata*, 670 F. Supp. 2d 1350 (S.D. Fla. 2009). Yet again, Defendant Franchisor is mistaken in its application of the case to the present issue. *Mercury* does, however, happen to also specifically speak to the issue of Arbitration Clause validity challenges, stating:

---

Franchisor chooses to recognize this choice of law provision only when convenient for it. *See* Def.'s Mot. to Compel Arb., page 11, fn 5.

4

Garrity-Weiss, P.A.
1002 East Newport Center Drive, Suite 102, Deerfield Beach, Florida 33442
Broward (954) 570-6616              Fax (954) 570-6618

>Moreover, in the United States Supreme Court case *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006), the court significantly narrowed the type of claims that a court may hear when faced with an arbitration clause. The *Cardegna* Court began by reaffirming that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445-46.

Lastly, Defendant Franchisor points to *Poole v. People's Choice Home Loan*, 2006 U.S. Dist. LEXIS 78013, in arguing that the parties are bound to arbitrate the issue of Arbitration Clause validity under the AAA Rules. However, *Poole* states the exact opposite, holding:

>The parties' positions are consistent with the mandate of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. Pursuant to the FAA, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

Thus, California and Florida law are clear that the procedurally proper first step is for the courts to examine the validity of the Arbitration Clauses if it is so challenged, as it would examine the validity of any other contract, before the disputes arising from the agreement itself can, potentially, be taken from the jurisdiction of the courts and subjected to arbitration.

### III.   Argument

As a preliminary matter, "On a motion to compel arbitration, a court cannot consider whether the contract as a whole is unconscionable. Instead, a court is limited to considering whether the arbitration clause in the agreement is unconscionable." *Nagrampa*, 469 F.3d at 1267. Here, Defendant Franchisor relies on Sections 20.6.1(a)-(b) and 8.1.1(a)-(b) of the Franchise Agreement, which both state that the "parties agree to submit any claim, controversy or dispute arising out of or relating to this Agreement…to Arbitration." Franchise Agreement [DE 1-1]. These sections further state that "the arbitration shall take place at our corporate offices (in California) or at the American Arbitration Association office closest to our corporate offices."

[DE 1-1]. Also, as previously stated, The Franchise Agreement states that is to be construed under California law. See [DE 1-1], at 9, 40.

    a. **The Legal Standard for Unconscionability**

"It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable." *Nagrampa*, 469 F.3d at 1280 (quoting *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686-87 (U.S. 1996). California courts have since extended the doctrine of unconscionability to specifically apply to franchise agreements. *See Id.*; *See also Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court*, 34 Cal. Rptr. 3d 659   (Cal. Ct. App. 2005)

The foregoing provisions relied upon by the Defendant Franchisor are contrary to the definitive case law from California courts applying this doctrine to Arbitration Clauses. Specifically, California courts find Arbitration Clauses unconscionable where there is a forum selection clause that mandates place and manner restrictions that are unduly oppressive and arise from a contract of adhesion. *See Id.*; *See also Higgins v. Superior Court*, 45 Cal. Rptr. 3d 293 (Cal. Ct. App. 2006). Notably, California courts have been more likely to hold contracts to arbitrate unconscionable than other contracts. *See AT&T*, 131 S. Ct. at 1748. The applicable test for unconscionability of a contract is whether it is both procedurally and substantively unconscionable. *See Id*. at 1747.

    To be precise, under California law,

> the "prevailing view" is that procedural unconscionability and substantive unconscionability need not both be present to the same degree: ''Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation . . . in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' *Id.* (quoting 15 Williston on Contracts § 1763 A, at 226-27 (3d ed. 1972)). "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is

Garrity-Weiss, P.A.
1002 East Newport Center Drive, Suite 102, Deerfield Beach, Florida 33442
Broward (954) 570-6616                    Fax (954) 570-6618

unenforceable, and vice versa." *Id*.; *see also Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 175, 116 Cal. Rptr. 2d 671    (2002) ("Given Countrywide's highly oppressive conduct in securing Mercuro's consent to its arbitration agreement, he need only make a minimal showing of the agreement's substantive unconscionability.").

*Nagrampa, 469 F. 3d. at 1267*; *See also Gentry v. Superior Court,64 Cal. Rptr. 3d 773, 793* (Cal. 2007). *Nagrampa* also involved a dispute under California law over the validity of an Arbitration Clause in a Franchise Agreement. *See generally* 469 F.3d. Specifically, after two years of unprofitable operation, the franchisee unilaterally terminated the Franchise Agreement. *Id.* at 1265. The franchisor initiated arbitration proceedings claiming that the franchisee owed it in excess of $ 80,000 in fees. *Id*. The franchisee, similarly, objected to the arbitration. *Id.* at 1265-1266. The court found that there was no evidence that the franchisee intentionally relinquished or abandoned her right to object to arbitration. *Id.* at 1279.

The court then held that the Arbitration Provision in the Franchise Agreement was procedurally and substantively unconscionable. In so holding, the court stated that the district court's failure to analyze the evidence of procedural unconscionability in proportion to the evidence of substantive unconscionability was error. *Id*. at 1281, 1293. In the end, the court held that because the Arbitration Clause could not be saved by severance or restriction, the entire arbitration provision was invalid and unenforceable. *Id*. at 1293. Hence, the following discussion of the procedural and substantive unconscionability of the Arbitration Clause is critical the present dispute.

b. **The Arbitration Clauses are Procedurally Unconscionable.**

The procedural element of the unconscionability analysis focuses on oppression and surprise, but the threshold inquiry is that of oppression. *See Nagrampa*, 469 F. 3d. at 1281, 1284 ("However, under California law, surprise need not be demonstrated if the court determines that

the arbitration provision of an adhesive contact is oppressive."). Procedural unconscionability generally takes the form of a contract of adhesion, 'which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Gentry,* 64 Cal. Rptr. 3d at 792 (citing *Discover Bank v. Superior Court*, 30 Cal. Rptr. 3d 76 (Cal. 2005)). Procedural unconscionability is not, however, to be construed as an issue of whether the party claiming procedural unconscionability should have known of the arbitral provision or whether the other party had a duty to inform of the clause. *See Nagrampa*, 469 F. 3d. at 1284.

Notably, "California courts have long recognized that franchise agreements have some characteristics of adhesion because of the 'vastly superior bargaining strength' of the franchisor." *Nagrampa*, 469 F. 3d. at 1282 (citing *Keating v. Superior Court*, 183 Ca. Rptr. 360 (Cal. 1982)). As the California Court of Appeal stated in *Postal Instant Press, Inc. v. Sealy*, 51 Cal. Rptr. 2d 365 (Cal. Ct. App. 1996) (cited in *Nagrampa*, 469 F. 3d. at 1282) :

> Although franchise agreements are commercial contracts they exhibit many of the attributes of consumer contracts. The relationship between franchisor and franchisee is characterized by a prevailing, although not universal, inequality of economic resources between the contracting parties. Franchisees typically, but not always, are small businessmen or businesswomen or people like the Sealys seeking to make the transition from being wage earners and for whom the franchise is their very first business. Franchisors typically, but not always, are large corporations. The agreements themselves tend to reflect this gross bargaining disparity. Usually they are form contracts the franchisor prepared and offered to franchisees on a take-[it-]or leave-it basis.
>
> . . . Franchising involves the unequal bargaining power of franchisors and franchisees and therefore carries within itself the seeds of abuse. Before the relationship is established, abuse is threatened by the franchisor's use of contracts of adhesion presented on a take-it-or-leave-it basis.

(Internal quotation marks and citations omitted). Here, the Arbitration Provision in the Franchise Agreement was clearly non-negotiable. Defendant Franchisor is a large national

franchising company with over 100 franchises nationwide. The Franchise Agreements Defendant Franchisor offered were uniform and pre-made. Plaintiff Franchisee, made up of two individuals in a substantially weaker bargaining position, simply had the option to sign the Franchise Agreement as written or opt out. *Compare Nagrampa*, 469 F. 3d. at 1282-1983.

Furthermore, "The California Court of Appeal has rejected the notion that the availability in the market place of substitute employment, goods, or services alone can defeat a claim of procedural unconscionability." *Id.* at 1283. (citing *Martinez v. Master Protection Corp.*, 12 Cal. Rptr. 3d 663 (Cal. Ct. App. 2004) (finding employment contract adhesive where arbitration agreement was presented as a specific "condition of employment"); *Villa Milano Homeowners Ass'n v. IL Davorge*, 102 Cal. Rptr. 2d 1 (Cal Ct. App. 2000) ("[I]n a given case, a contract might be adhesive even if the weaker party could reject the terms and go elsewhere."); *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138 (Cal. Ct. App. 1997) (noting that even though sophisticated corporate executive "was not a person desperately seeking employment," the employment contract was procedurally unconscionable because it was presented on a "take it or leave it basis"). *But see Dean Witter Reynolds v. Superior Court*, 259 Cal. Rptr. 789 (noting that "even though a contract may be adhesive, the existence of 'meaningful' alternatives available to such contracting party in the form of other sources of supply tends to defeat any claim of unconscionability").

*Dean Witter*, however, is factually distinguishable. There, the California Court of Appeal held that the combination of the plaintiff's sophistication and "a meaningful choice of available alternative sources of supply" defeated his claim of procedural unconscionability in a dispute over the assessment of fees on an individual retirement account. *Id.* at 772. The *Dean Witter* plaintiff was an investor-attorney who specialized in class action litigation involving financial

institutions, and who had a great degree of experience with financial service contracts. *Id*. at 762. Here, however, the owners of Plaintiff Franchisee were first-time franchise owners and, although they vigilantly performed their due diligence, they were without any experience in the area of franchise purchases and negotiations. Therefore, the potential availability of other franchise opportunities alone would not have changed Plaintiff Franchisee's understanding that this franchisor was taking advantage of it. *See Nagrampa*, 469 F. 3d. at 1283.

Moreover, "the sophistication of a party, alone, cannot defeat a procedural unconscionability claim." *See Id.* (citing *Graham v. Scissor-Tail, Inc*., 171 Cal. Rptr. 604 (Cal. 1981) (finding procedural unconscionability where successful and prominent music producer Bill Graham was required by the "realities of his business as a concert promoter to sign [union] form contracts"); *A & M Produce Co. v. FMC Corp*., 135 Cal. App. 3d at 489-90 ( Cal. Ct. App. 1982) (commenting that the California Supreme Court is among the many courts that "have begun to recognize that experienced but legally unsophisticated businessmen may be unfairly surprised by unconscionable contract terms"); *Nyulassy v. Lockheed Martin Corp*.,16 Cal. Rptr. 3d 296 (Cal. Ct. App. 2004) (finding procedural unconscionability even where employee was represented by a lawyer in settlement negotiations)).

Therefore, given the adhesive nature of the Franchise Agreement and Plaintiff Franchisee's lack of sophistication in the present matter, the Arbitration Clauses must be found to be procedurally unconscionable.

    c.  **The Arbitration Clauses are Substantively Unconscionable.**

The substantive element of unconscionability focuses on overly harsh or one-sided results. *See Gentry*, 64 Cal. Rptr. 3d 773; *See also Nagrampa*, 469 F. 3d. at 1281 ("'[T]he paramount consideration in assessing conscionability is mutuality.' California law requires an

arbitration agreement to have a 'modicum of bilaterality,' and arbitration provisions that are 'unfairly one-sided' are substantively unconscionable.") (internal citations omitted). "Because California courts employ a sliding scale in analyzing whether the entire arbitration provision is unconscionable, even if the evidence of procedural unconscionability is slight, strong evidence of substantive unconscionability will tip the scale and render the arbitration provision unconscionable." *Nagrampa*, 469 F. 3d. at 1281 (citing *Armendariz v. Foundation Health Psychare Services, Inc.*, 99 Cal Rptr. 2d 745 (Cal. 2000)).

In the present matter, the substantive unconscionability stems from the extremely unfair terms contained in the Arbitration Clauses. Namely, section 20.6.1(d) of the Franchise Agreement and Section 8.1.1(d) of the Multi-Unit Development Agreement state, "If we [the franchisor] shall desire to seek specific performance or other extraordinary relief including, but not limited to, injunctive relief under this Agreement…any such action shall not be subject to arbitration and we shall have the right to bring such action as described in Section 20.6.2[2] [describing court filings]." (*clarification added*). In other words, Defendant Franchisor is the only party with the option not to arbitrate, and it can exercise that option under any circumstances. Put yet another way, Defendant Franchisor is the only party that can compel arbitration. This inherently makes the Arbitration Clauses unfairly one-sided and severely prejudicial to Plaintiff Franchisee. *See Higgins*, 45 Cal. Rptr. 3d (holding that an arbitration provision allowing only the defendants to compel arbitration was substantively unconscionable).

Furthermore, Defendant Franchisor misinterprets the "modicum of bilaterality" requirement in *Armendariz* to be a principle that is satisfied by the present agreements' carving out of claims under certain federal acts and claims to "obtain possession of the premises of the

---

[2] In the Multi-Unit Development Agreement section 8.1.1, the only change is that the language "as described in Section 20.6.2" reads "as described in Section 8.1.2"

Business." *See* Def.'s Mot. to Enjoin Arbitration; *See also* [DE 1-1], Section 20.6.1(c). To the contrary, *Armendariz* was referring to a nearly identical factual situation as the one presented here, in which the more powerful party required the weaker party to accept a grossly unfair arbitration clause. 99 Cal. Rptr. 2d at 769 (citing *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138 (Cal. Ct. App. 1997) (holding an agreement between an employer and a high-level executive employee to be a substantively unconscionable contract of adhesion)).

In *Stirlen*, which also involved a challenged Arbitration Clause, the court pointed out that the employee pursuing claims had to bear with the inherent shortcomings of arbitration--"limited discovery, limited judicial review, limited procedural protections." The employer, on the other hand, in pursuing its claims, was not subject to these disadvantageous limitations based on language it had strategically placed in the agreement. *See* 60 Cal. Rptr. 2d 138. Similarly, in *Kinney v. United Healthcare Servs.*, 83 Cal. Rptr. 348 (Cal. Ct. App. 1999), the court held:

> Faced with the issue of whether a unilateral obligation to arbitrate is unconscionable, we conclude that it is. The party who is required to submit his or her claims to arbitration [forgoes] the right, otherwise guaranteed by the federal and state Constitutions, to have those claims tried before a jury. Further, except in extraordinary circumstances, that party has no avenue of review for an adverse decision, even if that decision is based on an error of fact or law that appears on the face of the ruling and results in substantial injustice to that party….we find that the unilateral obligation to arbitrate is itself so one-sided as to be substantively unconscionable. (*internal citations omitted*).

The *Armendariz* court followed in suit, holding:

> We conclude that *Stirlen* and *Kinney* are correct in requiring this "modicum of bilaterality" in an arbitration agreement. Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on "business realities."

As outrageous as this alone is, it is not the only grossly unconscionable part of the Arbitration Clauses from a substantive prospective. These same sections of the respective

agreements also state that "the arbitration must take place at our corporate offices (in California) or at the American Arbitration Association offices closest to our corporate offices." This requirement constitutes an unduly burdensome place and manner restriction on Plaintiff Franchisee. On this point, the *Nagrampa* court addressed nearly identical facts, holding that:

> To assess the reasonableness of the "place and manner" provisions in the arbitration clause, we must take into account the "respective circumstances of the parties." *Bolter*, 87 Cal. App. 4th at 909. In *Bolter*, the Court of Appeal held that place and manner restrictions were unconscionable where small "Mom and Pop" franchisees located in California were required to travel to Utah to arbitrate their claims against an international carpet-cleaning franchisor. *Id.* The Court of Appeal found a forum selection provision unreasonable and "unduly oppressive" because the remote forum would work severe hardship upon the franchisees and would unfairly benefit the franchisor by effectively precluding the franchisees from asserting any claims against it. *Id.*; *see also Comb*, 218 F. Supp. 2d at 1177 ("Limiting venue to PayPal's backyard appears to be yet one more means by which the arbitration clause serves to shield PayPal from liability instead of providing a neutral forum in which to arbitrate disputes."); *Armendariz*, 24 Cal. 4th at 118 (holding that structuring an arbitration provision to effectively preclude the other party from pursuing its claims would be unconscionable, because "[a]rbitration was not intended for this purpose"). Because the unconscionable time and place requirements in *Bolter* had not tainted the entire agreement, the Court of Appeal chose to sever them. 87 Cal. App. 4th at 911.

469 F. 3d at 1288. Here too, the forum selection provision imposes an unfair and overly burdensome place and manner restriction on Plaintiff Franchisee, whose owners are Florida residents with much lesser means for repeated cross-country traveling, hiring of local counsel, and provision of business management in their absence. *See Am. Online, Inc. v. Superior Court*, 108 Cal. Rptr. 2d 699, 707 (2001) ("Therefore, to be enforceable, the selected jurisdiction must be 'suitable,' 'available,' and able to 'accomplish substantial justice.'") (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 ( U.S. 1972)).. Indeed, the remote forum provided for in the Arbitration Clauses would work severe hardship upon Plaintiff Franchisee, effectively precluding them from asserting any claims against Defendant Franchisor and shielding Defendant Franchisor from liability. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,

13

Garrity-Weiss, P.A.
1002 East Newport Center Drive, Suite 102, Deerfield Beach, Florida 33442
Broward (954) 570-6616             Fax (954) 570-6618

473 U.S. 614, 632 (U.S. 1985). There could not be place and manner restrictions more clearly substantively unconscionable.

As happened to the one-woman franchisee in *Nagrampa* and *Bolter*, Plaintiff Franchisee would be forced to fly across the country to arbitrate the Franchise Agreement when the crux of Plaintiff Franchisee's well-supported Complaint is that it lost vast amounts of money operating its franchise and faces financial hardship. *See* 469 F. 3d at 1289. For these reasons, the *Nagrampa* court held:

> The forum selection provision has "no justification other than as a means of maximizing an advantage over [franchisees]." As in *Bolter*, "[a]rguably, [MailCoups] understood those terms would effectively preclude its franchisees from ever raising claims against it, knowing the increased costs and burden on their small businesses would be prohibitive." Indeed, that was the effect of requiring arbitration to proceed in Boston, a location so prohibitively costly to Nagrampa that she was precluded from participating in the proceeding.
>
> ****
>
> California courts refuse to enforce arbitration provisions on public policy grounds if they impede the enforcement of unwaivable statutory rights. Under California law, a right or cause of action created for a public purpose cannot, by private agreement, be waived, contravened, burdened, or subjected to procedural shortcomings that would preclude its vindication. *See Armendariz*, 24 Cal. 4th at 100 (explaining that this rule derives from California Civil Code section 3513, which prohibits the contractual waiver of legal rights established for a public purpose, and section 1668, which makes unlawful those contracts that would exempt a party from violations of law). Following this principle, California courts have stricken arbitration provisions that would prevent the enforcement and vindication of public rights by imposing unreasonable fees on a party, or by requiring arbitration in a distant and inconvenient forum. (*internal citations omitted*).

469 F. 3d at 1290, 1292. Applied here, the instant forum selection provision would likely force Plaintiff Franchisee to forgo un-waivable public rights by imposing unreasonable costs to arbitrate her claims in California. It follows that the subject provisions are unenforceable as contrary to California public policy. *See America Online, Inc. v. Superior Court*, 108 Cal. Rptr. 2d 699, 707 (Cal. Ct. App. 2001). Thus, as in *Bolter*, the court must sever these unconscionable

14

Garrity-Weiss, P.A.
1002 East Newport Center Drive, Suite 102, Deerfield Beach, Florida 33442
Broward (954) 570-6616                    Fax (954) 570-6618

provisions from the Franchise Agreements entirely. 104 Cal Rptr. at 896; *See also Alexander v. Anthony Int'l, L.P*, 341 F.3d 256, 270-272 (3rd Cir. 2003) (refusing to sever the unconscionable provisions or to enforce the arbitration clause because unconscionability permeated the agreement to arbitrate); *Armendariz*, 99 Ca. Rptr.at 776 (Referring to mandatory arbitration clauses in the parties contract, the court held that "Because a court is unable to cure this unconscionability through severance or restriction and is not permitted to cure it through reformation and augmentation, it must void the entire agreement.").

### IV.     Conclusion

Considering the foregoing, Plaintiff Franchisee implores this Court to find the present Arbitration Clauses permeated with unconscionability. Upon such a finding, Plaintiff Franchisee urges this Court to refuse the enforcement of the Arbitration Clauses or the mere severance of their unconscionable provisions, and deny Defendant Franchisor's Motion to Compel.

Dated:  April 16, 2012

                                            s/ CHRISTINE TRAINA
                                            Christine C. Traina, Esq.
                                            Florida Bar No.  91238
                                            ctraina@gwlawfirm.net
                                            GARRITY-WEISS, P.A.
                                            1002 E. Newport Center Drive, Suite 102
                                            Deerfield Beach, FL 33442
                                            Tel.: (954) 570-6616
                                            Fax: (954) 570-6618
                                            Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

     **I HEREBY CERTIFY** that on April 16, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                s/ CHRISTINE TRAINA_____
                                                Christine C. Traina, Esq.
                                                Florida Bar No.  91238
                                                ctraina@gwlawfirm.net

## SERVICE LIST

Susan Yoffee, Esq.
Florida Bar No. 511919
syoffee@haileshaw.com
Gary Woodfield, Esq.
Florida Bar No. 563102
Haile, Shaw & Pfaffenberger, P.A.
660 US Highway One, Third Floor
North Palm Beach, FL 33408
Tel.: (561) 627-8100
Fax: (561) 622-7603
Attorneys for Defendant
Notification of electronic filing generated by CM/ECF