UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80226-CIV-COHN/SELTZER

SENIOR SERVICES OF PALM BEACH LLC,
a Florida Limited Liability Company,

       Plaintiff,

v.

ABCSP INC.,
a California Corporation,

       Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION
## TO COMPEL ARBITRATION AND DISMISS PROCEEDINGS

**THIS CAUSE** is before the Court upon Defendant ABCSP Inc.'s Motion to Compel Arbitration and Dismiss Proceedings [DE 7] ("Motion"). The Court has considered the Motion, the Memorandum in Support of the Motion [DE 8] ("Memorandum"), Plaintiff Senior Services of Palm Beach LLC's Response in Opposition to the Motion [DE 14] ("Response"), Defendant's Reply in Support of its Motion [DE 19] ("Reply"), the record in this case, the argument of counsel at the June 1, 2012 hearing, and is otherwise fully advised in the premises.

### I. BACKGROUND

Defendant ABCSP, Inc. is a corporation that franchises independent businesspersons to operate businesses that provide the public with non-medical in-home personal care, skilled nursing care, and assisted living/residential care placement services. Mem. at 1. On March 2009, Plaintiff Senior Services of Palm Beach LLC entered into a Franchise Agreement with Defendant. See Franchise Agreement

[DE 1-1]. The Franchise Agreement contained a Multi-Unit Development Agreement. See Multi-Unit Development Agreement, Exhibit D to Franchise Agreement [DE 1-1 at 52-66]. The same month, the parties entered into a Modification Agreement, which modified the Franchise Agreement. See Modification Agreement [DE 8-1]. Under the three Agreements, Plaintiff was granted the right to develop and operate franchises from an approved location in Florida. See Franchise Agreement; Multi-Unit Development Agreement; Modification Agreement.

On February 28, 2012, Plaintiff filed this lawsuit against Defendant. See Complaint [DE 1]. Plaintiff asserts the following claims: (1) declaratory judgment that the arbitration clauses are unconscionable; (2) violation of the Florida Franchise Act; (3) violation of the Florida Deceptive and Unfair Trade Practices Act; (4) breach of contract; (5) breach of implied covenant of good faith and fair dealing; (6) fraudulent inducement; (7) negligent misrepresentation and omission; (8) rescission; and (9) intentional infliction of emotional distress.

In the instant Motion, Defendant seeks to dismiss this action and compel Plaintiff to arbitrate its claims based on the arbitration clause contained in the parties' Agreements. The arbitration clause in Paragraph 20.6.1(a) of the Franchise Agreement and Paragraph 8.1.1(a) of the Multi-Unit Development Agreement provides, the "parties agree to submit any claim, controversy or dispute arising out of or relating to this Agreement . . . to Arbitration." Franchise Agreement ¶ 20.6.1(a); Multi-Unit Development Agreement ¶ 8.1.1(a). For the reasons discussed below, the Court will grant the Motion and compel arbitration.

## II. LEGAL STANDARD

The parties agree that this dispute is governed by the Federal Arbitration Act ("FAA") and California law. See Franchise Agreement ¶¶ 20.6.1(e), 20.7; Resp. at 3; Mem. at 11. The FAA provides as follows:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added); Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 55-56 (2003). In enacting § 2 of the FAA, Congress declared a national policy favoring arbitration, and mandated the enforcement of valid arbitration agreements. Southland Corp. v. Keating, 465 U.S. 1, 10 (1984); see also Shearson/Am. Express v. McMahon, 482 U.S. 220, 226 (1987) (the FAA "thus establishes 'a federal policy favoring arbitration,' requiring that 'we rigorously enforce agreements to arbitrate.'"); Wheat, First Sec., Inc. v. Green, 993 F.2d 814, 817 (11th Cir. 1993). Additionally, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. 460 U.S. 1, 24-25 (1983). However, "no party can be compelled to arbitrate unless that party has entered into an agreement to do so." See Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001); see also AT&T Mobility, LLC v. Conception, 131 S. Ct. 1740, 1745 (U.S. 2011).

## III. ANALYSIS

Plaintiff argues that the arbitration clause is unconscionable. See Resp. at 2. Defendant contends that the determination of whether the arbitration clause is unconscionable is for the arbitrator, not the Court, see Reply at 1-3, but that, regardless, the clause is not unconscionable, see id. at 4-11. As discussed below, the Court finds that first, the issue of unconscionability is for the arbitrator, not the Court, and second, even if the issue were properly before the Court, the Court would not find the clause to be unconscionable. Therefore, the Court will grant Defendant's motion, compel arbitration, and dismiss this action.

### A. Unconscionability is a Matter for the Arbitrator

Generally, when deciding whether the parties in a case have agreed to arbitrate certain questions, including the validity and enforceability of their arbitration clause, courts "should apply ordinary state-law principles that govern the formation of contracts." See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). This is because arbitration itself "is a matter of contract." Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772 (2010) (citing First Options, 514 U.S. at 943). Thus, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Id. (citations omitted). Yet, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." Id. (quoting AT&T Techs. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)).

As Defendant notes, such evidence exists here. The parties' arbitration clause

4

states that arbitration "shall be conducted by the American Arbitration Association [("AAA")] in accordance with the rules of the [AAA]." Franchise Agreement ¶ 20.6.1; Multi-Unit Development Agreement ¶ 8.1.1(a). The AAA Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule 7(a). "[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005); see also Fallo v. High-Tech Inst., 559 F.3d 874, 880 (8th Cir. 2009) ("the parties' incorporation of the AAA Rules is clear and unmistakable evidence that they intended to allow an arbitrator to answer that question."); Terminix Int'l Co, LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid") (citing Contec, 398 F.3d at 208)); Valley Power Sys., Inc. v. Gen. Elec. Co., No. CV 11-10726 CAS (JCx), 2012 WL 665977, at *5 (C.D. Ca. Feb. 27, 2012) ("by selecting the ICDR Rules, the parties manifested their unmistakable intent that the arbitrators, rather than a court, would decide whether there is an enforceable agreement to arbitrate"); Mercury Telco Group, Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P., 670 F. Supp. 2d 1350, 1354-55 (S.D. Fla. 2009) (finding "clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability of the claims to an arbitrator" based on the incorporation of certain arbitration rules) (citing Terminix, 432 F.3d at 1332). Therefore,

as Defendant asserts, "[b]y agreeing that all disputes arising out of the Agreements would be subject to arbitration under the AAA's Rules, [Plaintiff] unmistakably agreed that an arbitrator, not a court, would determine the very issues it has raised here."  Mem. at 8; see also Mem. at 12; Reply at 2-3.

Plaintiff does not dispute that it assented to the Agreements, including the arbitration clause.  Plaintiff also does not dispute that the AAA Rules would govern if the parties arbitrated their claims.  Nonetheless, Plaintiff argues that the AAA Rules are inapplicable at this step of the proceedings because "Plaintiff Franchisee is challenging the validity of the Arbitration Clause itself, a preliminary matter that must be determined by the courts before the issue of arbitrability may arise."  Resp. at 3-4.  Plaintiff relies on the general rule that "the procedurally proper first step is for the courts to examine the validity of the Arbitration Clauses if it is so challenged," id. at 4, but Plaintiff neglects the exception to the general rule—that if the parties agree to arbitrate the validity of the arbitration clause, then the courts must defer to the arbitrator on that issue, see Rent-A-Center, 130 S. Ct. at 2779 (holding that unless there was a challenge to the delegation provision specifically, the Court must enforce that provision, leaving any challenge to the validity of the agreement for the arbitrator).  Therefore, the Court will grant the Motion and dismiss this action to allow the arbitrator to determine whether the arbitration clause is unconscionable.  Nonetheless, the Court goes on to explain that, if the matter were properly before the Court, the undersigned would not find the clause to be unconscionable.[1]

---

[1] The Court recognizes that case law exists which calls into question whether the incorporation of the AAA Rules constitutes "clear and unmistakable"

## B. The Arbitration Clause is Not Unconscionable

"It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable." Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1267 (9th Cir. 2006) (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1652) ("generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [FAA] § 2.")). "California courts have extended the doctrine of unconscionability to embrace franchise agreements." Id. (citing Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court, 34 Cal. Rptr. 3d 659, 668 (Cal. Ct. App. 2005) ("Franchise agreements are not per se unenforceable, but their provisions can be examined to see if the characteristics of unconscionability are present in part or in whole.").

Under California law, an arbitration clause is analyzed for both procedural and substantive unconscionability. Nagrampa, 469 F.3d at 1280. The Ninth Circuit describes the relevant law as follows:

> In California, the "prevailing view" is that procedural unconscionability and substantive unconscionability need not both be present to the same degree: Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation . . . in proportion to the greater harshness or unreasonableness of the substantive terms themselves . . . . In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

---

evidence of the parties' intent to delegate the matter of unconscionability to the arbitrator. See, e.g., Ajamian v. CantorCO2e, L.P., 137 Cal. Rptr. 3d 773, 788-91 (Cal. Ct. App. 2012) (finding a lack of "clear and unmistakable" evidence based on incorporation of the AAA rules, but where arbitration clause called for application of the AAA rules, NASD rules, or the rules of any other alternative dispute resolution organization). However, absent binding precedent holding otherwise, this Court must follow the law as it currently stands.

7

Id. (citations and quotations omitted).  Therefore, the Court evaluates first, procedural unconscionability, and second, substantive unconscionability.

### 1. Procedural Unconscionability

The "[p]rocedural unconscionability analysis focuses on 'oppression' or 'surprise.'" Nagrampa, 469 F.3d at 1280 (citations and quotations omitted).  "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice, while surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them."  Id. (citations and quotations omitted).

The threshold inquiry, however, is "whether the arbitration agreement is adhesive."  Armendariz v. Found. Health Psychcare Servs., Inc., 99 Cal. Rptr. 2d 745, 768 (Cal. 2000).  An adhesion contract is a "standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms," Flores v. Transamerica HomeFirst, Inc., 113 Cal. Rptr. 2d 376, 382 (Cal. Ct. App. 2001).  Some California courts hold that "[a] finding of a contract of adhesion is essentially a finding of procedural unconscionability," id., but others hold that although "adhesion contracts often are procedurally oppressive, this is not always the case," Morris v. Redwood Empire Bancorp, 27 Cal. Rptr. 3d 797 (2005).  As the Ninth Circuit explained, "whether a contract of adhesion is inherently oppressive, and therefore automatically procedurally unconscionable, or whether oppression is a separate element that must be present . . . both standards for procedural unconscionability are satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation

8

and an absence of meaningful choice.'" Nagrampa, 469 F.3d at 1281 (quoting Flores, 113 Cal. Rptr. 2d at 381).

Plaintiff contends that the arbitration clause in the parties' Agreements is procedurally unconscionable because it is a contract of adhesion due to the fact that it was non-negotiable. Resp. at 8. Plaintiff explains, "Defendant Franchisor is a large national franchising company with over 100 franchises nationwide. The Franchise Agreements Defendant Franchisor offered were uniform and pre-made. Plaintiff Franchisee . . . simply had the option to sign the Franchise Agreement as written or opt out." Id. at 8-9. Defendant responds with evidence refuting these contentions and showing that the contract was not "imposed upon the subscribing party without an opportunity to negotiate the terms." Flores, 113 Cal. Rptr. 2d at 382. In particular, Defendant presents the Modification Agreement [DE 8-2], which "reflect[s] multiple negotiated changes to the form Franchise Agreements, including changes relating to the payment of fees and licensure requirements." Reply at 3. As Defendant notes, "Plaintiff does not allege that Vivian Torres [one of Plaintiff's two owners] was unable to make changes to the arbitration provision, nor does it state that she tried but was unable to negotiate changes to the arbitration provision." Id. Indeed, as evidenced by the changes she made through the Modification Agreement, it appears that Ms. Torres could have negotiated changes to the arbitration clause if she so desired.

Plaintiff also writes that it was "in a substantially weaker bargaining position," that its owners "were first-time franchise owners and . . . were without any experience in the area of franchise purchases and negotiations." Resp. at 9, 10. Once again, Defendant presents evidence that refutes these allegations. Defendant submits the sworn

Certification of Defendant's CEO, Michael Newman, in which Mr. Newman reports that he personally negotiated the Agreements with Ms. Torres, who was represented by legal counsel during the negotiations. Certification of Michael Newman [DE 8-1] ¶¶ 3-4. Mr. Newman also explains that the parties negotiated changes to the Franchise Agreement as reflected in the Modification Agreement. Id. ¶ 5. Even if this was Ms. Torres's first time entering into a franchise agreement, she had a background of at least ten years of healthcare and healthcare finance experience. See id. ¶ 6. She represented to Mr. Newman, that "she had been a founding partner of an international claims management company, and . . . that she had: (1) administered managed care, financial budgeting, physician compensation contract analysis, and operations and accounting functions for a medical center management services organization; (2) developed and managed a budget for over eighty (80) hospital employed physicians; and (3) developed financial models for reviewing physician compensation and bonus structure." Id. She further represented "that she had a Master of Science in Industrial Engineering and that she had participated in various health care associations, including the Health Information Management Systems Society and the Institute for Diversity in Health Management." Id.

Ms. Torres was a sophisticated, educated businesswoman with experience in healthcare, and who was represented by legal counsel during negotiations. She was not a young, unsophisticated, vulnerable party to this negotiation. See Higgins v. Superior Court, 45 Cal. Rptr. 3d 293, 304 (2006) (finding procedural unconscionability where, among other things, petitioners were "young and unsophisticated, and had recently lost both parents"). Thus, this was not a situation involving "inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice." Nagrampa,

469 F.3d at 1280.

Finally, Plaintiff does not contend that the arbitration clause was procedurally unconscionable based on surprise, and there is no evidence that the "terms [we]re hidden in a prolix printed form." Nagrampa, 469 F.3d at 1280.  Therefore, because there was no oppression or surprise here, the arbitration clause is not procedurally unconscionable.  See id.

### 2. Substantive Unconscionability

The substantive unconscionability analysis focuses on "overly harsh" or "one-sided" results.  Nagrampa, 469 F.3d at 1280 (citations and quotations omitted).  "The paramount consideration in assessing conscionability is mutuality.  California law requires an arbitration agreement to have a 'modicum of bilaterality,' and arbitration provisions that are 'unfairly one-sided' are substantively unconscionable." Id. at 1281 (citations and quotations omitted).  "Because California courts employ a sliding scale in analyzing whether the entire arbitration provision is unconscionable, even if the evidence of procedural unconscionability is slight, strong evidence of substantive unconscionability will tip the scale and render the arbitration provision unconscionable." Id. (citing Armendariz, 99 Cal. Rptr. 2d 745).  Of course, the Court has already determined that the arbitration clause in this case is not procedurally unconscionable, but the Court nonetheless goes on to evaluate whether there is strong evidence of substantively unconscionability.

Plaintiff argues that the arbitration clause is substantively unconscionable because the terms contained therein were "extremely unfair." Resp. at 11.  In its Response, Plaintiff identifies two provisions of the arbitration clause which it contends

are unconscionable.  First, Plaintiff points to the part of the clause that states, "If we [the Defendant] shall desire to seek specific performance or other extraordinary relief including, but not limited to, injunctive relief under this Agreement . . . any such action shall not be subject to arbitration and we shall have the right to bring such action as described in Section 20.6.2 [describing court proceedings]."  Franchise Agreement ¶ 20.6.1(d); Multi-Unit Development Agreement ¶ 8.1.1(d).  Plaintiff interprets this provision to render the arbitration clause "unfairly one-sided and severely prejudicial to Plaintiff," Resp. at 11, because the provision means that Defendant is the only party that can compel arbitration.  However, as Defendant explains, the claims at issue in this provision (i.e. claims for the collection of franchise fees owed) "are usually brought by franchisors and require immediate resolution."  Reply at 6.  Thus, the provision is not "overly harsh."  Further, as Defendant notes, Paragraph 20.3 permits "either party" to institute a court proceeding for temporary or preliminary injunctive relief," Franchise Agreement ¶ 20.3, placing both parties on even ground with respect to temporary or preliminary injunctive relief.  Additionally, according to Defendant's reading of the arbitration clause, "both parties may bring multiple claims in court, both parties must bring all other claims in arbitration, and both parties have the ability to compel arbitration."  Reply at 6.  The Court agrees with this reading and finds that Plaintiff has not demonstrated that the arbitration clause is unfairly one-sided based on this provision.

      Second, Plaintiff argues that the forum selection clause in the arbitration clause is substantively unconscionable.  The forum selection clause provides, "the arbitration must take place at our corporate offices (in California) or at the American Arbitration

Association offices closest to our corporate offices." Franchise Agreement ¶ 20.6.1(a); Multi-Unit Development Agreement ¶ 8.1.1(a).  Without submitting any evidence in support, Plaintiff asserts that this "requirement constitutes an unduly burdensome place and manner restriction on Plaintiff," Resp. at 13, because Plaintiff's "owners are Florida residents with much lesser means for repeated cross-country traveling, hiring of local counsel, and provision of business management in their absence," id.  Plaintiff further argues that "the remote forum provided for in the Arbitration Clauses would work severe hardship on Plaintiff Franchisee, effectively precluding them from asserting any claims against Defendant Franchisor and shielding Defendant Franchisor from liability."  Id.  Although requiring a party to travel to a location so prohibitively costly that a party is "precluded from participating in the proceeding," is one factor to consider in evaluating substantive unconscionability, "[m]ere expense or inconvenience is not the test of unreasonableness" for a forum selection clause such as this one.  Smith, Valentino & Smith, Inc. v. Superior Court, 17 Cal. 3d 491, 486 (1976).  There certainly might be other venues that would be more convenient for Plaintiff, but there is no evidence that Plaintiff was surprised to learn that arbitration would take place in California, or that Plaintiff expected to arbitrate elsewhere.  See contra Nagrampa, 469 F.3d at 1290 (California resident justifiably believed she could resolve her dispute in California and was unfairly surprised to learn she would have to arbitrate in Massachusetts).  Plaintiff has not argued that there are (and the Court is not aware of) any statutory legal considerations that would disadvantage Plaintiff in an arbitration proceeding in California as opposed to elsewhere.  See contra id. at 1289, 1292-93 (statutory protections to California citizen would not apply if the parties arbitrated elsewhere).  As mentioned above, Ms. Torres

negotiated certain terms of the Franchise Agreement, and she had the opportunity to negotiate the forum selection clause as well, but she chose not to.  Thus, the forum selection provision of the arbitration clause does not render the clause unduly burdensome.  Accordingly, because Plaintiff has not shown that the arbitration clause has "overly harsh" or "one-sided" results, the clause is not substantively unconscionable.[2]

Thus, because the clause is neither procedurally nor substantively unconscionable, even if the matter of unconscionability were properly before the Court, the Court would compel arbitration.  However, as discussed above, the matter of unconscionability is for the arbitrator.  Therefore, the Court will grant the Motion and compel arbitration.

---

[2] At the hearing, Plaintiff identified a third provision which it argued was substantively unconscionable: Paragraph 20.6.5 of the Franchise Agreement, which is essentially identical to Paragraph 8.1.5 of the Multi-Unit Development Agreement.  In this provision, Defendant "reserve[d] the right, at any time, to create a dispute resolution program and related specifications, standards, procedures and rules for the implementation thereof to be administered by us or our designees for the benefit of all franchisees conducting business under the System."  Franchise Agreement ¶ 20.6.5; Multi-Unit Development Agreement ¶ 8.1.5.  Plaintiff argued that Defendant's ability to unilaterally create a separate dispute resolution program was unfairly one-sided and therefore substantively unconscionable.  Defendant responded that (1) in context, this provision reads as a pre-litigation dispute resolution system, (2) this system is not really used, and (3) this provision could be carved out of the clause.

The Court notes, initially, that this provision does not apply directly to the instant dispute, as Defendant has not created such a dispute resolution system.  Further, in practice, the provision might not be as unfair as Plaintiff suggests, given that any dispute resolution system is required to be created "for the benefit" of Plaintiff or other franchisees.  See Franchise Agreement ¶ 20.6.5; Multi-Unit Development Agreement ¶ 8.1.5.  Finally, if this provision were unconscionable, it could be stricken from the arbitration clause without significantly impairing the remainder of the clause.  Without any written submission on the matter, however, the Court is hesitant to declare this provision unconscionable.  Regardless, in accordance with the above discussion, this is a matter for the arbitrator, and not the Court.

### C. The Court Will Dismiss This Action Without Prejudice and Compel Arbitration

Finally, as all claims in this action are subject to arbitration, the Court will dismiss the case rather than stay it.  See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) ("dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable") (citing Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.")).  However, in an abundance of caution, because the arbitrator will first determine whether the arbitration clause is unconscionable, and because a finding of unconscionability would send this case back to court, dismissal will be without prejudice.

### IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendant ABCSP Inc.'s Motion to Compel Arbitration and Dismiss Proceedings [DE 7] is **GRANTED**.  The parties shall arbitrate all of the claims pending in this action.  It is further

**ORDERED AND ADJUDGED** that the above-captioned action is **DISMISSED without prejudice**.  Any pending motions are **DENIED as moot**, and the Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 7th day of June, 2012.

*/s/ James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF